# UNITED STATES DISTRICT COURT  DISTRICT COURT OF GUAM

for the

District of Guam

APR 11 2024
ODP
**JEANNE G. QUINATA**
**CLERK OF COURT**

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Black Samsung smartphone, IMEI number 350105091649403,
currently located at Suite 300, Sirena Plaza, 108 Hernan Cortez
Ave., Hagatna, Guam 96910 (See Attachment A)

Case No. **MJ-24-00049**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Black Samsung smartphone, IMEI number 350105091649403, currently located at Suite 300, Sirena Plaza, 108 Hernan Cortez Ave., Hagatna, Guam 96910. Property further described in Attachment A.

located in the _____ District of _____ Guam _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B which is incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841(a)(1), 843(b) & 846 | Distribution of Methamphetamine |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Samuel E. Lawver, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/11/2024__

BP

_____
*Judge's signature*

City and state: Hagatna, Guam

MICHAEL J. BORDALLO, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Samuel E. Lawver, being duly sworn, hereby depose and state the follows:

## A.  <u>**BACKGROUND OF AFFIANT**</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA). I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed by the DEA since August of 2019. As part of my training, I received eighteen (18) weeks of training in the area of narcotics investigations at the DEA Justice Training Center in Quantico, Virginia.

3.      Between February, 2020 and February 2023, I was assigned to the DEA's Stockton Resident Office in Stockton, California. Since February 2023, I have been assigned to the DEA's Guam Resident Office. During the course of my employment with the DEA, I have had the opportunity to converse with law enforcement professionals as to drug trafficker methods, regarding the manufacture, importation, transportation, distribution and sales of controlled substances, as well as their methods used to conceal, transport, and launder cash and/or other types of drug proceeds. I have received training in various means by which persons involved in these types of criminal activities use telephones, computers, buildings, storage units, residences, vehicles, businesses, and other structures to conceal their activities from law enforcement. I have become familiar with the types and amounts of profits made by drug dealers, the methods,

1

language, and terms that are used. I have received both informal and formal training in the area of drug/narcotics investigations.

4.      I have been the case agent and assisted other agents and officers in investigations on cases involving violations of: 21 U.S.C. § 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances; 21 U.S.C. § 843(b), use of a communication facility in drug trafficking; and 21 U.S.C. § 846, conspiracy to commit the foregoing. Specifically, those investigations have focused on the manufacture and distribution of marijuana, crystal methamphetamine, fentanyl, heroin, and cocaine. I am familiar with, and have participated in, conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, controlled deliveries of contraband, questioning of witnesses, search warrants, confidential sources, and pen registers. Through my training and experience, I have become acquainted with the modus operandi as it pertains to the illegitimate possession and distribution of controlled substances. These methods include the use of telephones, social media, secure messaging applications. cellular telephones, wireless communication technology, counter surveillance, elaborately planned smuggling schemes tied to legitimate businesses, false or fictitious identities, and the use of coded or vague communications in an attempt to thwart law enforcement. I have also interviewed confidential sources and have discussed with them the lifestyle, appearances, and habits and methods of drug dealers and users.

5.      As a result of my personal participation in the investigation of matters discussed in this affidavit, I am familiar with the facts and circumstances of this case. The facts and circumstances discussed below were derived through my examination of records, my conversation with other law enforcement officers, various other sources of information, and through my knowledge, experience, and training. The information in this affidavit is provided for the limited purpose of establishing probable cause. The information is not a complete statement of all the facts related to this case.

6.       Prior to my employment with the DEA, I served as a Peace Officer for the Canton Police Department in Canton, Ohio (April 2015 – August 2019). I participated in investigations, search warrants, arrests, and interviews pertaining to various criminal matters. During my service with the Canton Police Department, I arrested subjects for simple possession as well as possession for sales of controlled substances. I have testified in Stark County, Ohio Courts regarding criminal offenses including assaults with a deadly weapon, possession of controlled substances, burglaries, and related cases.

7.       The purpose of this application is to search for and seize evidence, more particularly described in Attachment B hereto of violations Title 21 United States Code, Sections 841(a)(1), 843 (b) and 846.

8.       The information contained within this affidavit is based upon my personal observations, training, and on information related to me by other law enforcement officers and investigators as set forth more fully herein. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Because the purpose of this affidavit is to set forth probable cause, your affiant has not included each and every fact known to the affiant in connection with this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846 are located within the seized cellular telephone described as a Black in color Samsung smartphone bearing IMEI number "350105091649403" with black phone case.

9.       I know from training, experience, and discussions with other law enforcement officers that users and distributors of controlled substances often keep records, photographs, audio/video recordings, items which communicate information that relate to the transportation, purchasing, and distribution of controlled substance. These records and information are often kept on smart phones, cell phones, laptops, desktop computers, tablets, Cloud, and other electronic

3

devices. I know narcotic traffickers and users also keep packaging materials, digital scales, and other drug paraphernalia.

10.     I am familiar with the operation of illegal drug trafficking organizations (DTO) in the United States, and DTO with foreign nexus. I know from my training, knowledge and experience that the importers and distributors of controlled substance often utilize the U.S. Postal Service, and express freight forwarding cargo companies such as UPS, and FedEx to facilitate the distribution of controlled substance. Such express parcels will come from foreign or domestic places of origin and will typically sent by Express, Priority, or First-Class Mail.

11.     I am aware based on my personal training and experience that narcotics traffickers often use cellular phones to communicate instructions, plans and intentions to their criminal associates and to report the progress of their criminal activities and save the names, addresses and telephone numbers of these criminal associates as "contacts" on their cellular telephones or other electronic devices. I am aware that evidence of these instructions, plans, intentions, reports and general discussions of criminal activity are sent or received in the form of text messages, incoming and outgoing call histories or voice messages left in personal voice mail system. I am familiar in the methods in which text messages are sent and received and know that third party phone applications, most commonly referred to as "Apps," are widely used.

12.     I am also aware that narcotics traffickers take or cause to be taken photographs or videos movies of themselves, their associates, their property and assets, and their product. Courts have recognized that unexplained increases in wealth, particularly when this wealth is not reported as income or is in excess of an individual's reported income, and is primarily in the form of case, is probative evidence of crimes motivated by greed, including drug trafficking activities.

13.     I am also aware that these new "Apps" allow narcotics traffickers and smugglers to conduct financial transactions on their cellular telephones or other electronic devices via individual financial institution "Apps" to transfer money suspected to be the proceeds from the sale of illegal

4

narcotics from one account to another without ever having to enter a physical location of that financial institution.

14.    I am aware that cellular phones and electronic devices have the capability to store extensive financial records or information to include but not limited to, bank, checks and credit card information, account information and other financial records. This capability allows narcotics traffickers to maintain their anonymity and lessen the likelihood of being discovered by law enforcement personnel.

15.    I am aware that cellular phones and electronic devices have the capability to show and retain information regarding the ownership of or who used the device, when files and additional information were created, edited or delated, such as logs, registry entries, configuration files, usernames and passwords, documents, browsing history, user profiles, email contacts, "chats" and instant messaging logs, photographs and correspondence.

16.    The information contained within this affidavit is based upon my personal observations, training, and on information related to me by other law enforcement officers and investigators as set forth more fully herein. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of Title 21 U.S.C. §§ 841(a)(1), 843(b), and 846 are located within the electronic device identified in Attachment A.

## B.    PURPOSE OF AFFIDAVIT AND IDENTIFICATION OF THE DEVICE TO BE EXAMINED

17.    The property to be searched is a Black in color Samsung smartphone bearing IMEI number "350105091649403" with black phone case: hereafter the "DEVICE".  The DEVICE is currently located at the Drug Enforcement Administration / Guam Resident Office, located at 108 Hernan Cortez Ave. in Hagatna, Guam 96910.  In my training and experience, I know that the

5

DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as when the DEVICE first came into the possession of DEA.

18.    The applied-for warrant would authorize a forensic examination of the DEVICE for the purpose of identifying electronically stored data described in Attachment B.

## C.    FACTS ESTABLISHING PROBABLE CAUSE

19.    On or about September 08, 2023, investigators received information from a reliable DEA confidential source (CS) regarding a Facebook post made by JONOVAN CRUZ ("JONOVAN"). The CS provided investigators a screenshot of the post which contained the tracking and estimated delivery information of a United States Postal Service (USPS) package. The tracking number, 9405 5301 0935 5005 0383 40, was subsequently provided to investigators with the United States Postal Inspection Service (USPIS). Additionally, the Facebook post was quickly deleted after being posted.



20.    USPIS successfully located the USPS package with the above referenced tracking number which was addressed to Ray Jay CRUZ at 111 Chalan Balako PMB 457 Dededo, Guam 96929, and subsequently presented the package for an external examination to a drug detection

6

canine controlled by Guam Customs and Quarantine Agency (GCQA) Drug Detection Dog Unit (DDDU). K9 handler Officer Jeremy Artero informed USPIS Task Force Officer (TFO) Valerie Pereda that his assigned Drug Detection (DD) dog "Lord," did alert to the presence of narcotics

21.     On September 12, 2023, USPIS TFO Pereda obtained a search warrant authorizing the search of the contents of the package. The search revealed that the package contained approximately 234 grams of crystal methamphetamine. The crystal methamphetamine was field tested prior to sending to the DEA Regional Laboratory and tested positive as being methamphetamine.

22.     Additionally, on September 19, 2023, DEA TFO David Elliot was monitoring prison phone calls through the Department of Corrections "Pay-Tel" phone monitoring system. TFO Elliott noted a phone call that occurred on September 12, 2023, between inmate Muen Geun Kim and cellular telephone 671-686-9727 (Target Phone 1). An open-source database search revealed that the Target Phone is associated to JEREMY CRUZ ("JEREMY"). Additionally, TFO Elliot believes that the person who was utilizing the target phone was JEREMY based upon his previous encounters and personal knowledge of JEREMY.

23.     The aforementioned Pay-Tel phone call was recorded and a copy was obtained as evidence by coordinating with the Guam Department of Corrections. During the call, JEREMY stated: "I was expecting something today but I think it's a no go because my brother put it on his story and everybody saw his story and that's why we don't want to pick it up.".

24.     Furthermore, investigators obtained a search warrant for JONOVAN's Facebook account (Account ID #: 100094352003772). Analysis of the returned Facebook data revealed communications regarding the seized package and further communications indicating an ongoing pattern of drug trafficking. Specifically, communications that JONOVAN had with ERIC CRUZ (ERIC) and JEREMY demonstrated that all three subjects were conspiring to commit drug trafficking offenses. Based upon these communications investigators also obtained a search

7

warrant for JEREMY (Account ID #: 100005008772143) and ERIC's (Account ID #: 100046004731411) Facebook accounts.

25. Analysis of JEREMY's Facebook accounts revealed ongoing Facebook messenger communications regarding narcotics, including the coordination of purchasing significant amounts of methamphetamine. Additionally, the account information revealed that the accounts were connected to mobile devices.

26. The following is an extract of the relevant Facebook messenger chat communications consistent with drug trafficking and information regarding the seized USPS package between JONOVAN and JEREMY:

**Author** Jeremy Laitan Cruz / 2023-08-25 08:41:40 UTC
https://www.guampdn.com/news/two-face-drug-charges-after-1-5-o unces-of-meth-found/article_617afd0c-430f-11ee-
**Date** Created 2023-08-25 08:41:40 UTC
**Summary** Two men face drug charges after police executed a search warrant at a Dededo home and discovered about 1.5 ounces of crystal methamphetamine, according to a magistrate's complaint filed in
**Text** Two men face drug charges after police executed a search warrant at a Dededo home and discovered about 1.5 ounces of crystal methamphetamine, according to a magistrate's complaint filed in
**Title** Two face drug charges after 1.5 ounces of meth found
**Url** https://www.guampdn.com/news/two-face-drug- charges-after-1-5-ounces-of-meth-found/article_617afd0c-430f-11ee-a4f5-37851d65bac0.html

**Author** Jeremy Laitan Cruz / 2023-08-25 08:41:48 UTC
Read Dat

**Author** Jeremy Laitan Cruz / 2023-08-25 08:42:03 UTC
Just a heads up cuz I know my name got drop

**Author** Jeremy Laitan Cruz / 2023-08-25 08:43:01 UTC
Try not keeping anything in da house bro

**Author** Jeremy Laitan Cruz / 2023-08-25 09:53:48 UTC
I'm clearing out rn and I ain't gonna do anything for a lil bit bro ..

**Author** Jonovan Cruz / 2023-08-25 09:56:01 UTC
You called Jeremy.

**Author** Jeremy Laitan Cruz / 2023-08-25 10:11:17 UTC
I'm sending all my buyers to you cuz where all clearing out over here and angel don't want to do anything here

**Author** Jonovan Cruz / 2023-08-25 10:12:56 UTC
K bro thank

8

**Author** Jonovan Cruz / 2023-09-10 23:03:29 UTC
2023-09-10 23:03:29 UTC
You sent a photo.



**Author** Jeremy Laitan Cruz /2023-09-10 23:03:47 UTC
K

**Author** Jeremy Laitan Cruz / 2023-09-10 23:06:13 UTC
9405093550050383

**Author** Jeremy Laitan Cruz / 2023-09-10 23:06:29 UTC
Can you chk if that's correct

**Author** Jeremy Laitan Cruz / 2023-09-10 23:08:35 UTC
Jeremy sent a photo.



**Author** Jonovan Cruz / 2023-09-10 23:15:29 UTC
U got it

**Author** Jonovan Cruz / 2023-09-10 23:15:55 UTC
That's the ttracking number

**Author** Jeremy Laitan Cruz / 2023-09-10 23:18:45 UTC
You missed a call from Jeremy.

**Author** Jeremy Laitan Cruz / 2023-09-10 23:21:17 UTC
You missed a call from Jeremy.

**Author** Jeremy Laitan Cruz / 2023-09-10 23:24:25 UTC
Yo

**Author** Jonovan Cruz / 2023-09-10 23:28:40 UTC
Eric is checking

**Author** Jeremy Laitan Cruz / 2023-09-10 23:28:49 UTC
Ok bro

**Author** Jonovan Cruz / 2023-09-10 23:40:10 UTC
You sent a photo.



**Author** Jeremy Laitan Cruz / 2023-09-10 23:41:13 UTC
K it's either today or tomorrow bro

**Author** Jeremy Laitan Cruz / 2023-09-10 23:41:20 UTC
I'll keep you poated

**Author** Jeremy Laitan Cruz / 2023-09-10 23:41:24 UTC
Posted

27.     Based upon my training and experience and knowledge of this investigation, I believe that JONOVAN and JEREMY were discussing narcotics trafficking and exchanging information regarding the seized USPS parcel. For example, JEREMY sent JONOVAN a news article detaining a law enforcement search warrant that occurred in Dededo, Guam and stated,

10

"Just a heads up cuz I know my name got drop". JEREMY also stated that he (JEREMY) is "clearing out rn and I ain't gonna do anything for a lil bit bro" and that "I'm sending all my buyers to you cuz where all clearing out over here and angel don't want to do anything here". In the above communications JONOVAN sent JEREMY a picture with the numbers "9405093550050383" written on a piece of paper, which was missing the final two digits "40" of the seized parcel's tracking number. JEREMY then sent the screenshot of the USPS tracking website that indicated that the status of the parcel with tracking number "9405093550050383" was not available. JONOVAN responded and stated "ERIC is checking". Based upon my training and experience, I believe that JEREMY was concerned that his name was provided to law enforcement as a source of supply of narcotics during the search warrant and that he was going to have his (JEREMY) customers purchase narcotics from JONOVAN. Furthermore, I believe that JONOVAN accidently did not send the last two digits of the seized USPS parcel tracking number to JEREMY and that ERIC was going to verify the correct tracking number for the seized parcel.

28.    Additionally, on February 2, 2024, the Guam Police Department executed a local search warrant at the residence of JANET CRUZ (hereinafter referred to as "JANET"), located at 278A Naki Street, Ordot Chalan Pago.   During the execution of the search warrant law enforcement did locate and seize small amounts of methamphetamine and observed paraphernalia indicative of drug trafficking.  During that same time period, the DEA CS was attempting to coordinate a controlled purchase of methamphetamine with JEREMY.  However, according to the CS, JEREMY indicated that he (JEREMY) did not have any methamphetamine available to him because he had recently supplied a residence one pound of methamphetamine that got raided. Furthermore, a recorded conversation on February 4, 2024, between JEREMY and inmate Kyanna Lynn WULF (Hereinafter referred to as "WULF") on the Department of Corrections (DOC) PayTel phone system revealed the following pertinent summarized dialogue:

     **WULF:**     Asking JEREMY to pay half of her bail, approximately $10,000.00

| JEREMY: | "My friend got Popped". JEREMY further explains he is out of "10 grand". |
|---|---|
| JEREMY: | "Auntie Janet in there?" |
| WULF: | Confirms that Auntie Janet is in DOC. |
| JEREMY: | "Ask her if I'm good to go" |
| WULF: | "I'll ask when I see her" |
| JEREMY: | "Ask if she got caught with anything and if I'm good to go" "Ask if I got anything to worry about". |
| WULF: | Asking JEREMY what code she should use if he is not good after asking JANET. |
| JEREMY: | "I lost out a lot of money". |
| JEREMY: | "If she has anything else out there because I need to collect" |

29.     The Paytel phone system indicated JEREMY utilized Target Phone 1 to call into the DOC. As previously indicated within this affidavit Target Phone 1 was utilized by JEREMY to contact inmate Muen Geun Kim on September 12, 2023 and is associated to JEREMY via an open-source database.

30.     Based upon my training and experience and knowledge of the investigation I believe that JEREMY was referring to JANET during his PayTel conversation and that he supplied JANET with methamphetamine. Additionally, I believe that JEREMY wanted WULF to ask JANET if he (JEREMY) needed to be concerned regarding law enforcement and if there was any controlled substances or associated proceeds that needed to be collected from customers of the methamphetamine that he supplied her. I also believe that JEREMY regularly utilizes his cellular telephone to further the illicit activities of the DTO.

31.     Furthermore, on March 22, 2024, in the U.S. District Court of Guam, I applied for and obtained arrest warrants for ERIC, JONOVAN, and JEREMY for federal drug violations. Additionally, I applied for and obtained search warrants for three residences associated to the DTO.

32.     On March 27, 2024, the Guam Resident Office with the assistance of other federal and local law enforcement authorities executed the three search warrants. During the execution of the search warrants, investigators located JEREMY at 106 Taitano apartments, Dededo, Guam and took him into custody. During the search of the residence investigators located a cell phone located

12

on the bed in the sole bedroom of the residence. During questioning, investigators asked if he (JEREMY) would provide consent to search his phone which he denied. However, JEREMY did agree to make a phone call in an attempt to locate his brother JONOVAN, who was not located during the execution of the search warrant at 210 Chalan Ahgao, Astumbo, Dededo, Guam (JONOVAN's Residence). Investigators provided JEREMY the cell phone that was located on the bed (DEVICE) and observed JEREMY unlock the device with a secure passcode multiple time. After multiple attempts JONOVAN did not answer any of JEREMY's attempts to contact him.

33. The DEVICE was then seized from the scene and transported to the DEA Guam Resident Office. A check of the DEVICE for the IMEI or serial number stamped or engraved on the exterior of the DEVICE revealed IMEI number "350105091649403". The DEVICE is currently password protected. The DEVICE is currently in the lawful possession of the DEA. Therefore, while DEA might legally possess the DEVICE, I seek this warrant out of an abundance of caution to be certain that an examination of the DEVICE will comply with the Fourth Amendment and other applicable laws.

34. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1), 843(b) and 846 have been committed by JEREMY. There is also probable cause to search the information describe in Attachment A for evidence of these crimes as described in Attachment B.

35. Based on my training and experience, I know importers and distributors of controlled substance coordinate in importation, transportation, ordering, purchasing and the distribution of controlled substance and proceeds from the sales of controlled substance via cellular telephones. I am aware that criminals often use cellular phones to communicate instructions, plans, and intentions to their criminal associates and to report on the progress of their criminal activities. I am aware that criminal associates often will send pictures and videos of drug or drug proceeds to their criminal associates. Additionally, criminals will save pictures of drug and drug proceeds as

13

"trophy shots" detailing their drug activity. Specifically, I believe, based on my training and experience, that JEREMY used the DEVICE to coordinate drug transactions with his buyers. I also believe that the DEVICE contains evidence regarding other controlled substance trafficking activities involving Jeremy and other known and unknown associates.

## D.    TECHNICAL TERMS

36.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    Digital camera: A digital camera is a camera that records pictures as digital pictures files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage

14

media can contain any digital data, including data unrelated to photographs or videos.

        c.     Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

        d.     GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

        e.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable

15

storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

        f.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four number, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that company may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static---that is, long term---IP addresses, while other computers have dynamic---that is, frequently changed---Ip addresses.

        g.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

        37.     Based on my training, experience, and research, and from consulting the manufacturer's advertisement and product technical specifications available online at https://www.samsung.com. I know that the DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the DEVICE.

## E.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

        38.     Based on my knowledge, training, and experiences, I know that electronic devices

16

can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

39. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic might be on the DEVICE because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a delated portion of a file (such as a paragraph that has been delated from word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its

17

use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

40. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

41. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## F. CONCLUSION

42. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE described in Attachment A to seek the items described in Attachment B.

## G. REQUEST OF SEALING

43. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is not known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may jeopardize that investigation.

**FURTHER AFFIANT SAYETH NAUGHT.**

Samuel E. Lawver
Special Agent
Drug Enforcement Administration

18

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is a Black in color Samsung smartphone bearing IMEI number "350105091649403" with a black phone case, currently located at the Drug Enforcement Administration / Guam Resident Office, located at Suite 300, Sirena Plaza, 108 Hernan Cortez Ave., Hagatna, Guam 96910.

This warrant authorizes the forensic examination of the DEVICE for the purpose of identifying the electronically stored information, including content described in Attachment B.




19

## **ATTACHMENT B**

1.      All records on the DEVICE described in Attachment A that relate to violations of Title 21 U.S.C. §§ 841(a)(1), 843(b) and 846, including content, that involve Jeremy CRUZ and others, from January 1, 2023, to the present date, including:

a.      Text messages, voice mails, phone logs, emails, records, receipts, notes, ledgers, and other documents relating to the manufacturing, transporting, ordering, purchasing, and distribution of controlled substances.

b.      Photographs and videos, including those of co-conspirators, of assets and/or controlled substances.

c.      Contact lists to include telephone numbers and addresses.

d.      All bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.

3.      Evidence of the attachment to DEVICE of other storage devices, such as flash memory, or similar containers for electronic evidence.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.